United States District Court
District of Massachusetts

| | |
|---|---|
| Stephen Gill, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. |
| United States et al. | ) 19-12441-NMG |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

MEMORANDUM & ORDER

GORTON, J.

This action arises out of the capital case brought before a United States military commission against Abd Al-Rahim Hussein Muhammed Al-Nashiri ("Al-Nashiri") for his alleged involvement in the attack on the USS COLE in October, 2000. It conjoins military and civilian law by questioning whether military commissions have the authority to seize, detain or imprison civilian witnesses, such as plaintiff Stephen Gill ("Gill" or "plaintiff"), to compel their testimony before the commission.

It is before this Court after transfer from the United States District Court for the District of Columbia by United States District Judge James E. Boasberg who considered this case and found that, for jurisdictional and venue purposes, most of the case should be in this Court. This Court now notes its own

hesitancy to rule on the distinctions between our civilian and military court systems but, at the same time, is cognizant of a founding principle of our Republic that military authority has always been deemed subservient to civil authority.

Pending before this Court is the government's amended motion to dismiss plaintiff's amended complaint for lack of subject matter jurisdiction and failure to state a claim.  For the reasons that follow, that motion will be allowed, in part, and denied, in part.

I.  **Background**

A. **The Facts**

Gill is a civilian lawyer and resident of Massachusetts who formerly served as an officer in the Judge Advocate General Corps ("JAG") of the United States Navy.  In January, 2015, he was on active duty and served as the legal advisor pro tempore for the Al-Nashiri military commission which had been convened in September, 2011.  As the legal advisor, Gill reported to his superiors that certain federal employees were violating a Disqualification Order entered by the military judge, Colonel Vincent Spath ("the military judge"), which prohibited them from working on Al-Nashiri's case.  Soon thereafter, in quick succession, Gill was reassigned to another military command, was discharged from active duty and resumed civilian status.

In May, 2015, defense counsel for Al-Nashiri moved to dismiss the charges brought against his client and sought Gill's testimony at an evidentiary hearing before the commission. On September 7, 2016, Gill voluntarily traveled from Massachusetts to Virginia in his civilian capacity to proffer the requested testimony. At the conclusion of that session, Gill was informed by the military judge that he would need to return in October, 2016, to complete his testimony.

On or about October 13, 2016, Gill received a military commission subpoena ("the October subpoena") to appear in Virginia on October 17, 2016. On October 16, 2016, Gill mailed a written "application for relief" to quash the subpoena but received no response. Nonetheless, he did not appear so Military Judge Spath issued a "warrant of attachment," empowering the United States Marshals Service to procure Gill's presence before the commission.

The next day, Gill alleges that approximately 15 Deputy Marshals dressed in riot gear and five uniformed police officers of the Town of Marshfield

> stormed Mr. Gill's home with assault rifles and hand guns drawn and pointed at Mr. Gill.

The officers, according to the complaint, handcuffed him, searched his person, "forcibly" shackled his waist and ankles, took his wallet and searched his residence. Gill contends that

the officers then transported him to the United States District Courthouse in Boston, Massachusetts where he was detained in a holding cell before being transported to Logan Airport and escorted onto a flight to Reagan National Airport in the District of Columbia.

Gill was then transported to the Alexandria, Virginia County Detention Center and kept in a cell for the night.  The next morning, a different group of Deputy Marshals transported him to the Mark Center in Alexandria, Virginia to appear before the military commission via video teleconference technology. Prior to testifying, Gill complained to the military judge that his seizure and detention were unlawful and rendered him incompetent to testify.  Although the military judge ignored the complaint with respect to the legality of the seizure, he did administer a competency exam which Gill passed.

Thereafter, Gill resumed his testimony.  During redirect examination by Al-Nashiri's defense counsel, a Federal Public Defender delivered a letter to the military commission which advised Gill of his right to counsel as a civilian subject to military detention.  Rather than inform Gill of the letter, he asserts, the military judge instructed Al-Nashiri's defense counsel to withhold that information until the testimony was complete.

At the conclusion of Gill's testimony, he was allegedly detained in a security office without food, money or a mobile phone for another two hours.  After his repeated protests, Gill submits that he was provided a plane ticket back to Boston, Massachusetts and $300 in cash.  Approximately ten hours later, he arrived at to his residence in Massachusetts.  Gill contends that the entire experience caused him extreme emotional trauma, economic hardship and reputational damage.

### B. Procedural History

In February, 2019, Gill filed an amended complaint in the United States District Court for the District of Columbia ("D.D.C.") against the United States of America and individual employees of various federal agencies.  Gill asserted ten counts, two of which were against the individual defendants: a Fourth Amendment violation pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) ("Bivens claim") (Count I) and a petition for declaratory judgment (Count X).  Seven of the remaining counts were brought against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680 ("FTCA"), and include state law claims for trespass, false arrest, false imprisonment, abuse of process and intentional infliction of emotional distress (Counts II-VIII).  The final claim (Count IX) sought a declaratory judgment against the

United States but Gill has since reported that he is no longer pursuing that claim.

In April, 2019, in a separate proceeding, the United States Court of Appeals for the District of Columbia ("D.C. Circuit") considered whether the military judge (Colonel Vincent Spath) had engaged in judicial misconduct as the military judge in Al-Nashiri's capital case.  See In re Al-Nashiri, 921 F.3d 224 (D.C. Cir. 2019).  It had been revealed that Colonel Spath had applied for a position with the Department of Justice ("DOJ") as an immigration judge.  For that reason, Al-Nashiri petitioned the D.C. Circuit for a writ of mandamus, seeking vacatur of all orders issued by Spath on the ground that his application created a conflict of interest with respect to his role in Al-Nashiri's case because the DOJ has a vested interest in proceedings before military commissions.  The Circuit Court found that Colonel Spath's job application "cast an intolerable cloud of partiality over his subsequent judicial conduct", causing it to vacate all of the orders entered by Spath between November, 2015, and April, 2019.

Defendants subsequently moved to dismiss the amended complaint.  In December, 2019, United States District Judge James E. Boasberg of the D.D.C. granted the individual defendants' motion to dismiss (dismissing Counts I and X) on immunity grounds and transferred the remainder of the case to

this Session of this Court.  Following that transfer, the
government filed the pending amended motion to dismiss.

Just before the transfer, Gill filed a related complaint in
the Massachusetts Superior Court against the Town of Marshfield
and the 11 Marshfield police officers involved in his arrest,
asserting claims pursuant to 42 U.S.C. § 1983.  Defendants
removed the state court case in March, 2020, based on federal
question jurisdiction.  Gill subsequently moved to consolidate
the pending cases which this Court did in May, 2020.

## II.  Motion to Dismiss

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the
subject pleading must contain sufficient factual matter to state
a claim for relief that is actionable as a matter of law and
"plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
(2007)).  A claim is facially plausible if, after accepting as
true all non-conclusory factual allegations, the court can draw
the reasonable inference that the defendant is liable for the
misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d
1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look
beyond the facts alleged in the complaint, documents
incorporated by reference therein and facts susceptible to

judicial notice. <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st
Cir. 2011).  A court also may not disregard properly pled
factual allegations even if actual proof of those facts is
improbable. <u>Ocasio-Hernandez</u>, 640 F.3d at 12.  Rather, the
relevant inquiry focuses on the reasonableness of the inference
of liability that the plaintiff is asking the court to draw. <u>Id.</u>
at 13.

### B. Validity of the Subpoena and the Warrant of Attachment

The threshold question here is whether Colonel Spath, as a
military judge presiding over the <u>Al-Nashiri</u> military
commission, had the authority to issue a warrant of attachment
to empower the United States Marshals Service to seize and
detain a civilian witness to procure his appearance and compel
his testimony before the commission.

Gill contends that the military judge lacked such
authority, arguing that 1) the October subpoena was invalid,
2) no military judge, including Spath, has the authority to
punish a civilian witness for disobeying a subpoena by ordering
his seizure and detention and 3) his ultimate seizure and
detention was in violation of the Non-Detention Act, 18 U.S.C. §
4001(a).  Gill concedes that Rule 703(e) of the Rules of
Military Commissions ("R.M.C.") explicitly permits the use of a
warrant of attachment by a military commission to compel the
testimony of a civilian witness but avers that the rule lacks

the requisite support of a congressional statute.  The
government responds that the Military Commission Act, 10 U.S.C.
§§ 948a-950t, and the R.M.C. provide Spath with the authority to
issue the subject warrant of attachment.

### 1. The Subpoena

Pursuant to 10 U.S.C. § 949j(a)(2), military commissions
may use processes similar to those used by federal courts having
criminal jurisdiction in order to compel witnesses to appear and
testify before them.  Federal courts are authorized by Fed. R.
Crim. P. 17 to order the appearance of a witness by subpoena.
So too are federal grand juries and prosecutors presiding over
them. See In re Pantojas, 639 F.2d 822, 823-24 (1st Cir. 1980)
(noting that both a federal grand jury and its presiding
prosecutor have the power to subpoena a witness to compel his or
her testimony).  To be valid, a Rule 17 subpoena must

> state the court's name and the title of the proceeding,
> include the seal of the court, and command the witness to
> attend and testify at the time and place the subpoena
> specifies.

Fed. R. Civ. P. 17(a).  It also must be signed by the clerk of
the court. Id.

The October subpoena states the military commission's
convening order, the title of the proceeding (United States v.
Ab Al-Rahim Al-Nashiri) and a command that Gill attend and
testify before the commission on October 17, 2016, at the Mark

Center in Alexandria, Virginia.  It does not bear any seal,
however, nor was it signed by the presiding Military Judge or
his Clerk.  Instead, it bears the label "MC Form 453" and is
executed by General Martins, the Chief Prosecutor of the Office
of Military Commissions.  Gill contends that the October
subpoena is invalid because it is not

> similar to that which courts of the United States having
> criminal jurisdiction may lawfully issue.

Accordingly, he avers that it was error to hold him in contempt
for failing to comply with it.  This Court is not convinced.

Under 10 U.S.C. § 949j(a), military commissions may compel
witnesses to appear and testify before them using processes
similar, but not necessarily identical, to those used by federal
courts having criminal jurisdiction.  This Court finds that the
October subpoena is similar to those authorized by Fed. R. Crim.
P. 17.  That document contains the name of the relevant
adjudicatory body, the title of the proceeding and the place and
time at which Gill was to appear.  Upon receipt of the October
subpoena, therefore, Gill had all of the information necessary
to be in compliance.

Although the document is missing an official seal and the
signature of a court clerk, it contains other marks of
authenticity.  For one, it bears the label "MC Form 453",
thereby indicating that the document has been issued under the

aegis of the military commission. In re Mann, 728 F. Supp. 60, 61 (D. Me. 1990) (explaining that, because the original subpoena bears the stamped impression of the court's seal, it indicates "as a matter of law, that the subpoena is a document issued under the aegis of the Court."). Second, it was executed by the Chief Prosecutor in the Al-Nashiri case, as permitted by R.M.C. 703(e)(2)(C) (authorizing the Chief Prosecutor to issue a subpoena to command the presence of a civilian witness). In that sense, the subpoena is "similar to" a grand jury subpoena which can be validly issued by the presiding prosecutor. See In re Grand Jury Matters, 751 F.2d at 16 (stating that subpoenas are "almost universally instrumentalities of the United States Attorney's [O]ffice or of some other department of the executive branch.").

Accordingly, having found that none of the factual allegations indicate that the October subpoena is invalid, this Court concludes that Gill was required to comply with it. The Court next considers whether the military judge, Colonel Spath, had the authority to enforce that subpoena by holding Gill in contempt and, thereafter, directing his seizure and detention in order to compel his appearance and testimony.

### 2. The Warrant of Attachment

The factual allegations indicate that the subject warrant of attachment was issued by Colonel Spath pursuant to a finding

that Gill was in civil contempt of the military commission for
failing to appear and testify as directed.  When a subpoenaed
witness, without excuse, fails to appear and testify before an
adjudicative body as ordered, he may be held in either criminal
or civil contempt. See 28 U.S.C. § 1826; 18 U.S.C. § 401; Fed.
R. Crim. P. 17 & 42; United States v. Marquado, 149 F.3d 36, 39
(1st Cir. 1998).  The difference between the two is their
intended purpose. AngioDynamics, Inc. v. Biolitec AG, 780 F.3d
420, 426 (1st Cir. 2015).  The "purpose of civil contempt is to
coerce compliance with an order of the court" whereas the
purpose of criminal contempt is to "punish disobedience with a
judicial order". Marquado, 149 F.3d at 39-40 (emphasis in
original).

    Confinement may be imposed for either form of contempt,
although the former is "forward-looking" and a civil contemnor
may not be confined if he has complied with the court order or
the attendant proceedings have ended. Shillitani v. United
States, 384 U.S. 364, 368 (1966); AngioDynamics, Inc., 780 F.3d
420, 426 (1st Cir. 2015).  For that reason, it is said that a
civil contemnor "carr[ies] the keys of [his] prison in [his] own
pockets". Shillitani, 384 U.S. at 368 (internal quotation marks
and citation omitted).

    In this case, the penalty imposed on Gill reflected that of
civil, rather than criminal, contempt because his seizure and

detention was "a forward-looking penalty meant to coerce
compliance" with the October subpoena. See AngioDynamics, Inc.,
780 F.3d 420, 426 (1st Cir. 2015).  As evidence thereof, the
warrant of attachment, which has been incorporated into the
complaint, commanded the United States Marshals Service to

> forthwith bring [Gill] before this said Military Commission
> at the Mark Center . . . to testify as required by said
> subpoena.

Further evidencing a civil purpose, the military judge had
stated with respect to the warrant:

> I don't want him held any longer than need be because I
> don't want it to be any more punishment than it needs to be
> to get him here to testify.

Accordingly, the only purpose of the warrant of attachment
disclosed in the factual allegations was to coerce Gill's
testimony, not to punish him.

The fact that the military judge called such detention
"punishment" does not alter this Court's opinion. See
Shillitani, 384 U.S. at 369 ("The fact that both the District
Court and the Court of Appeals called petitioners' conduct
'criminal contempt' does not disturb our conclusion.").  The
United States Court of Appeals for the First Circuit has
recognized that

> [t]here is no dichotomous split between coercion and
> punishment . . . and a civil contempt sanction may evidence
> a punitive flavor.

AngioDynamics, Inc., 780 F3d at 426.  Nonetheless, so long as
the character and purpose of the sanction is to compel future
conduct, it relates to civil contempt. Id.; Shillitani, 384 U.S.
at 370.  The question remains, however, whether the military
judge had the legal authority to hold Gill in civil contempt and
to issue a warrant of attachment to procure his confinement or
whether such confinement violated the Non-Detention Act.

### i.   Civil Contempt Power of Military Commissions

Under the Non-Detention Act, unless otherwise authorized by
an act of Congress, "[n]o citizen shall be imprisoned or
otherwise detained by the United States". 18 U.S.C. § 4001(a).
One such Act of Congress is the Recalcitrant Witness Statute, 28
U.S.C. § 1826 which permits Courts of the United States,

> [w]henever a witness in any proceeding before or ancillary
> to any court or grand jury of the United States refuses
> without just cause shown to comply with an order of the
> court to testify[, i.e., a subpoena,] . . . [to] summarily
> order [the witness's] confinement at a suitable place until
> such time as the witness is willing to give such testimony.

28 U.S.C. § 1826.  The purpose of such confinement is coercive,
rather than punitive, and therefore parallels civil contempt.
See Shillitani v. United States, 384 U.S. 364, 370 (1966);
United States v. Marquardo, 149 F.3d 36, 39–41 (1st Cir. 1998).

Before a court can order such confinement, the witness must
typically be afforded adequate notice, reasonable time to
prepare a defense and an opportunity to be heard on that

defense. <u>See</u> <u>In re Bianchi</u>, 542 F.2d 98, 100 (1st Cir. 1976); <u>In re Di Bella</u>, 518 F.2d 955, 959 (2d Cir. 1975); <u>In re Grand Jury Investigation</u>, 545 F.2d 385, 388 (3d Cir. 1976); <u>see also</u> <u>United States</u> v. <u>Alter</u>, 482 F.2d 1016, 1023 (9th Cir. 1973) ("[A] proceeding in contempt to compel a federal grand jury witness to testify is civil enough to foreclose his claim that he has a constitutional right to a jury trial [but] criminal enough to require the . . . notice prescribed by Rule 42(b) and to a reasonable time to prepare his defense.").

That right to be heard generally entitles a contemnor to a hearing but there are

> certain settings[ in which] a matter can adequately be "heard" on the papers . . . [if], given the nature and circumstances of the case, . . . the parties had a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions.

<u>Morales-Feliciano</u> v. <u>Parole Board of Puerto Rico</u>, 887 F.2d 1, 6 (1st Cir. 1989) (quoting <u>Aoude</u> v. <u>Mobil Oil Corp.</u>, 862 F.2d 890, 894 (1st Cir. 1988)).  Furthermore, a court may "summarily" punish for contempt "in those [limited] instances where the witness' refusal to respond is without just cause". <u>In re Grand Jury Investigation</u>, 545 F.2d at 388 (internal quotation marks omitted).

Once an individual is found in civil contempt for disobeying a subpoena to testify, a court may impose civil confinement on the contemnor to coerce that testimony and it may

issue an arrest warrant (or its equivalent) to procure the confinement. See AngioDynamics, Inc. v. Biolitec AG, 946 F. Supp. 2d 205, 214-15 (D. Mass. 2013); NLRB v. Goren Printing Co., Nos. 87-1091, 88-1124, 88-1222, 1990 U.S. App. LEXIS 23199, at *8-9 (1st Cir. Nov. 30, 1990).

Another Act of Congress which authorizes the detention of a citizen to compel his testimony is the Federal Material Witness Statute, 18 U.S.C. § 3144, which provides that

> [i]f it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and . . . it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person.

Under that statute, the witness may be detained only if his testimony "can[not] adequately be secured by deposition". § 3144; United States v. Nai, 949 F. Supp. 42, 44 (D. Mass. 1996).

### ii.  Application

Although neither the Recalcitrant Witness Statute nor the Federal Material Witness Statute expressly apply to military commissions, for the reasons that follow, this Court concludes that military commissions may use procedures similar to those disclosed therein to compel the testimony of a defiant witness. Those procedures include holding a defiant witness in civil contempt and issuing the equivalent of an arrest warrant (i.e. warrant of attachment) to procure his confinement until he

agrees to testify. See AngioDynamics, Inc., 946 F. Supp. 2d at 214-15.

The Military Commission Act of 2009 ("the MAC") provides that defense counsel in a military commission shall

> have a reasonable opportunity to obtain witnesses[,] . . . comparable to the opportunity available to a criminal defendant in a court of the United States under Article III of the Constitution.

10 U.S.C. § 949j(a)(1); see also § 949(a)(2) ("Process issued in military commissions . . . to compel witnesses to appear and testify . . . shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue"). For the purpose of the October subpoena, Gill was a defense witness in the Al-Nashiri case because his testimony was initially requested by Al-Nashiri's defense counsel.  As such, the military commission was entitled to enforce the subpoena to compel Gill's testimony using the same procedures as those afforded to federal courts having criminal jurisdiction.[1] See

---

[1] Plaintiff's reliance on ICC v. Brimson is misplaced because the discussion therein on the authority (or lack thereof) of administrative agencies to enforce subpoenas is only dictum. Compare Brimson, 154 U.S. 447, 473 (1894); with Sacher v. United States, 343 U.S. 1, 8 (1952) ("[There are] very practical reasons which have led every system of law to vest a contempt power in one who presides over judicial proceedings.") and United States v. Shibley, 112 F. Supp. 734, 744 (S.D. Cal. 1953) ("It would be unrealistic to hold that, although [military courts of inquiry's] power to summon witnesses [is] the same as those of courts-martial, the means for making these powers effective,-by issuing a warrant of attachment,-is absent.").

also Hamdan v. Rumsfeld, 548 U.S. 557, 631-32 (2006) (holding that enemy combatants shall be afforded "all the judicial guarantees which are recognized as indispensable by civilized peoples."); Shillitani v. United States, 384 U.S. 364, 370 (1966) ("[I]t is essential that courts be able to compel the appearance and testimony of witnesses.").

Specifically, upon Gill's refusal to appear to testify and after a hearing, the military commission was entitled, as are federal courts, to find Gill in civil contempt, impose an order of confinement and issue a warrant of attachment to procure that appearance.  Indeed, the R.M.C. has interpreted the MAC to provide such authority. Compare R.M.C. 703(e)(2)(G) (authorizing a military judge to "issue a warrant of attachment to compel the attendance of a [civilian] witness" who refuses to comply with a subpoena); with 28 U.S.C. § 1826 (authorizing federal courts "summarily [to] order confinement at a suitable place until such time as the witness is willing to give such testimony"); and Fed. R. Crim. P. 17(g) (authorizing federal courts to hold in contempt "a witness who, without adequate excuse, disobeys a subpoena").

The conclusion that a military court has the theoretical authority to hold a defiant civilian witness in civil contempt and subsequently issue a warrant of attachment to procure his confinement does not, however, end the analysis.  It does not

determine whether the civil contempt order and attendant warrant of attachment were valid in this case, namely, whether Gill was afforded due process before he was summarily held in contempt. See, e.g., In re Bianchi, 542 F.2d at 101 ("[A] witness must be given a meaningful opportunity to present his defense at a hearing under 28 U.S.C. § 1826"); In re Grand Jury Investigation, 545 F.2d at 388 ("The power of the Court to 'summarily' punish for contempt is limited to those instances where the witness' refusal to respond is without just cause" (internal quotation marks omitted)).

Construing the factual allegations in Gill's favor, this Court concludes that the military judge improperly held him in contempt summarily, depriving Gill of adequate notice and an opportunity to proffer "just cause" for his failure to appear and testify.  The amended complaint asserts that Gill applied for relief to quash the subpoena just days after receiving it. Two days after that but before a decision on the motion was forthcoming, he was arrested, detained and brought before the commission without a hearing or any other opportunity to prepare and present his defense. In re Bianchi, 542 F.2d at 101 ("[A] witness must be given a meaningful opportunity to present his defense at a hearing under 28 U.S.C. § 1826.").  Even after Gill arrived at the Mark Center, moreover, the military judge allegedly refused to provide him with an opportunity to present

his defense.   Accordingly, for the purpose of this motion to dismiss, this Court finds that the civil contempt order of the military judge was invalid.   For that reason, this Court finds the associated warrant of attachment latently defective.

In any event, in In re Al-Nashiri, the D.C. Circuit vacated all orders issued by the military judge between November, 2015, and April, 2019. 921 F.3d 224, 241 (D.C. Cir. 2019).   According to the amended complaint, that period includes the order of civil contempt and the order commanding Gill's presence via a warrant of attachment which were entered by the military judge in the fall of 2016.   Evidently, the amended complaint states plausibly that the subject warrant of attachment was invalid. Consequently, this Court turns to the substantive claims asserted in the amended complaint.

### A. Federal Torts Claims Act ("the FTCA")

#### 1.    Legal Standard

Pursuant to the doctrine of sovereign immunity, a district court lacks jurisdiction over claims filed against the government unless and until the sovereign consents to being sued. See Reyes-Colon v. United States, 974 F.3d 56, 58 (1st Cir. 2020); Limone v. United States, 579 F.3d 79, 88 (1st Cir. 2009).   The FTCA provides that consent with respect to tort claims against the government, see 28 U.S.C. § 1346, subject to

a litany of exceptions. <u>Limone</u>, 974 F.3d at 88; <u>see</u> 28 U.S.C. §
2680.

A party faced with a motion to dismiss for lack of subject
matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) bears
the burden of establishing the court's jurisdiction over the
case. <u>See</u> <u>Lujan</u> v. <u>Defenders of Wildlife</u>, 504 U.S. 555, 561
(1992).  If the motion mounts a "sufficiency challenge", the
court will assess the sufficiency of the jurisdictional
allegations by construing the complaint liberally, treating all
well-pled facts as true and drawing all reasonable inferences in
the nonmoving party's favor. <u>Valentin</u> v. <u>Hospital Bella Vista</u>,
254 F.3d 358, 363 (1st Cir. 2001).

If sovereign immunity is waived pursuant to the FTCA, the
elements of the underlying tort claims shall be defined by state
law. <u>Limone</u>, 974 F.3d at 88.  Here, because the majority of the
allegedly tortious conduct occurred in Massachusetts, its tort
law governs. <u>See id.</u>

### i.   Discretionary Function Exception

One exception to the general waiver of sovereign immunity
under the FTCA is the discretionary function exception.
§ 2680(a); <u>see</u> <u>Kelly</u> v. <u>United States</u>, 924 F.2d 355, 360 (1st
Cir. 1991) ("When a claim is covered by the discretionary
function exception, it must be dismissed for lack of subject
matter jurisdiction.").  That exception applies to

> any claim . . . based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Magee v. United States, 121 F.3d 1, 4 (1st Cir. 1997) (quoting 28 U.S.C. § 2680(a)).

In order to determine whether government conduct constitutes a discretionary function, the court must apply a two-prong test: 1) whether the conduct in question was discretionary in nature in that it involved an element of judgment or choice and, if so, 2) whether it was the kind of conduct which the exception was intended to shield, namely, decisions based on considerations of public policy. United States v. Gaubert, 499 U.S. 315, 322-23 (1991); Magee, 121 F.3d at 4. The purpose of the exception is to prevent

> judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy.

Magee, 121 F.3d at 5 (internal quotation marks and citation omitted).

Conduct is not discretionary if the United States Constitution or a federal statute, regulation or policy specifically proscribes the challenged course of action taken by a government employee. Limone, 579 F.3d at 101 ("It is elementary that the discretionary function exception does not immunize the government from liability for actions proscribed by

federal statute or regulation . . . Nor does it shield conduct

that transgresses the Constitution."). That said,

> the fact that the discretion is exercised in a negligent
> manner does not make the discretionary function exception
> to the FTCA inapplicable.

Attallah v. United States, 955 F.2d 776, 784 n.13 (1st Cir.

1992).

### ii.   Intentional Torts Exception

The FTCA also excepts from its waiver of sovereign immunity

certain intentional torts committed by non-law enforcement

officers, including false imprisonment, false arrest and abuse

of process ("intentional tort exception"). See 28 U.S.C.

§ 2680(h). In doing so, however, it explicitly permits

intentional tort claims which relate to the actions or omissions

of federal law enforcement officers ("the law enforcement

proviso"). 28 U.S.C. § 2680(h).

> The FTCA defines "law enforcement officers" as

> any officer of the United States who is empowered by law to
> execute searches, to seize evidence, or to make arrests for
> violations of federal law.

Id. Members of the United States Military ("the military")

would not fall within that definition because they cannot

directly participate in a search, seizure or arrest of a

civilian unless otherwise authorized by law. See 10 U.S.C.

§ 275.

##### 2.    Application

###### i.   Trespass (Count II)

As an initial matter, Gill's claim for trespass is not barred by the intentional tort exception because it is not one of the torts enumerated in § 2680(h). <u>See</u> S. Rep. No. 93-588, at 3 (1973), <u>reprinted in</u> 1974 U.S.C.C.A.N. 2789, 2791 ("Obviously, the intent of the Committee that . . . trespass . . . be viewed as clearly within the scope of the Federal Tort Claims Act . . . [T]he Committee amendment [to § 2680(h)] would submit the Government to liability whenever its agents act under color of law so as to injure the public through search and seizures that are conducted without warrants or with warrants issued without probable cause."). For the reasons that follow, it is also not barred by the discretionary function exception.

A claim for civil trespass must establish 1) actual possession of the property by plaintiff and 2) intentional entry by defendant which is 3) unlawful. <u>New England Box Co.</u> v. <u>C & R Const. Co.</u>, 313 Mass. 696, 707 (1943). When law enforcement officers enter a plaintiff's land pursuant to a valid warrant and do not exceed the warrant's scope, they do not commit a trespass. <u>Leine</u> v. <u>City of Bothell</u>, 904 F. Supp. 2d 1124, 1132 (W.D. Wa. 2012). When the warrant authorizing that entry is deemed invalid, however, such unlawful entry it tortious. <u>Id.</u> at 1032–33.

Here, the amended complaint asserts that the Marshals entered Gill's property and searched his residence pursuant to an invalid warrant of attachment.  Whether the amended complaint states a claim for trespass turns, in part, on whether the warrant authorizing that entry was, in fact, invalid.  Because this Court finds the amended complaint plausibly states that it was, this Court also finds that Gill has stated a claim for trespass.

Furthermore, even if the warrant of attachment was validly issued, the amended complaint states a claim for trespass to the extent it challenges the decision of the Deputy Marshals to search Gill's residence incident to his arrest.  A protective sweep is

> a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others [that] is narrowly confined to a cursory visual inspection of those places in which a person might be hiding.

United States v. Delgado-Perez, 867 F.3d 244, 251 (1st Cir. 2017) (internal quotation marks and citation omitted) (quoting Maryland v. Buie, 494 U.S. 325 (1990)).  It is within the bounds of an arrest warrant and permissible under the Fourth Amendment only where there are

> articulable facts which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

- 25 -

Id. at 251-52 (quoting Buie, 494 U.S. at 327).

In this case, the subject warrant ordered the Deputy Marshals forthwith to bring Gill before the military commission but did not authorize the search of Gill's residence. Nonetheless, after Gill was detained outside his home, the Marshals allegedly searched "each and every room" therein.  Even if such a search was a "protective sweep" incident to Gill's arrest, the amended complaint permits the reasonable inference that it exceeded the scope of the warrant because there were no articulable facts which would warrant the belief that a dangerous individual was inside of Gill's home.  Such an unreasonable search is violative of the Fourth Amendment, unprotected by the discretionary function exception of the FTCA and plausibly constitutes a trespass.[2] See Delgado-Perez, 867 F.3d at 253 (invalidating a protective sweep in which there was no indication "that another person might be present in the home at the time of the arrest, let alone that another dangerous person would be."); cf. Opalenik v. LaBrie, 945 F. Supp. 2d 168, 186 (D. Mass. 2013) ("[B]ecause an objectively reasonable

---

[2] Although the D.D.C. found that the "protective sweep" was constitutionally permissible for the purpose of Gill's Bivens claim, see Gill v. United States, 415 F. Supp. 3d 127, 140 (D.D.C. 2019), this Court finds that the facts alleged in the complaint state plausibly, for the purpose of this motion to dismiss, that it was a trespass.

officer should have known that the recording studio was beyond the scope of the warrant, the court will conclude that the officers [did not perform a discretionary function.]").

### ii. False Arrest (Count III) and False Imprisonment (Count IV)

To maintain a cause of action for false arrest under Massachusetts law, a plaintiff must establish that 1) the defendant arrested the plaintiff 2) without probable cause. Lucas v. City of Boston, No. 07-cv-10979, 2009 WL 1844288, at *25 (D. Mass. June 19, 2009) (citing Mass. Sup. Ct. Jury Instructions § 23.5).  Similarly, to succeed on a claim of false imprisonment, a party must show an

> intentional and unlawful confinement of a person, either
> directly or indirectly, of which the person confined is
> conscious or is harmed by such confinement.

Noel v. Town of Plymouth, 895 F. Supp. 346, 354 (D. Mass 1995) (internal citations omitted).

A confinement which arises out of an arrest is "unlawful" only if the arresting officer lacked probable cause. Goddard v. Kelley, 629 F. Supp. 2d 115, 129 (D. Mass. 2009); Sietins v. Joseph, 238 F. Supp. 2d 366, 381 (D. Mass. 2003).  A facially valid warrant can provide officers with probable cause to arrest. Cf. Felix v. Luegas, 00-122250, 2004 WL 1775996, *7 (D. Mass. Mar. 2, 2004) ("[E]xecuting a facially valid warrant generally amounts to justification sufficient to insulate the

arresting officer from common law liability for false imprisonment."); see also United States v. Towne, 870 F.2d 880, 884 (2d Cir. 1989); Johnson v. Darby, 142 F. Supp. 3d 275, 278 (E.D.N.Y. 2015) (citing Baker v. McCollan, 443 U.S. 137 (1979)).

Here, although the warrant of attachment served on Gill may have been procedural invalid, none of the factual allegations indicate that it was facially so.  There is also no factual allegation in the amended complaint indicating that the Deputy Marshals knew that they were without authority to make the arrest.  Armed with a facially valid (albeit latently defective) warrant, the Court concludes that the Deputy Marshals plausibly had probable cause to arrest Gill and subsequently detain him. See Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986) ("[A] police officer's initial finding of probable cause justifies not only arrest, but a reasonable period of continued detention"). Accordingly, Gill has failed to state a claim for false arrest and false imprisonment, so this Court will dismiss Counts III and IV for that reason.

### iii.  Abuse of Process (Counts V-VII)

In order to succeed on a claim for abuse of process, a moving party must prove that 1) a process was used 2) for an ulterior or illegitimate purpose 3) resulting in damage. Psy-Ed Corp. v. Klein, 459 Mass. 697, 713 (2011); Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989) ("An action for abuse of

process lies when an officer uses a lawful criminal process to accomplish an unlawful purpose" (citing <u>Powers</u> v. <u>Leno</u>, 509 N.E.2d 46 (Mass. App. Ct. 1987)).  Under Massachusetts law, such "process" in this context "refers to the papers issued by a court to bring a party or property within its jurisdiction". <u>Powers</u> v. <u>Leno</u>, 509 N.E.2d 46, 48 (Mass. App. Ct. 1987).

To the extent Gill's abuse of process claims depend on the actions of the military judge and prosecutors, this Court lacks jurisdiction based on sovereign immunity.  Those actors are not law enforcement officers as defined by 18 U.S.C. § 2680(h). Rather, they are military personnel and prosecutors and the intentional tort exception to the FTCA bars claims for abuse of process which relate to their actions. <u>See</u> <u>Yacubian</u> v. <u>United States</u>, 750 F.3d 100, 108 (1st Cir. 2014) ("It is undisputed here that the actions of federal prosecutors are outside the ambit of § 2680(h) and are accordingly immune from [claims of the enumerated intentional torts] under the FTCA."); 10 U.S.C. § 275 (prohibiting military personnel from searching, seizing or arresting civilians).

With respect to the actions of the law enforcement officers, moreover, there are no factual allegations that such officers used any process or had any ulterior or illegitimate purpose or motivation in their execution of the warrant of attachment.  Indeed, the complaint makes no reference to the

Deputy Marshals' state of mind, at all.  Accordingly, Counts V-VII will be dismissed for lack of subject matter jurisdiction and for failure to state a claim.

### iv.  Intentional Infliction of Emotional Distress (Count VIII)

Under Massachusetts law, a plaintiff states a claim for intentional infliction of emotional distress if he alleges that the defendant engaged in extreme and outrageous conduct and without privilege which causes the plaintiff severe emotional distress. Limone v. United States, 579 F.3d 79, 91 (1st Cir. 2009) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318 (1976)).  Conduct is extreme and outrageous only if it is "beyond all bounds of decency and . . . utterly intolerable in a civilized community". Sena v. Commonwealth, 417 Mass. 250, 263 (1994).

In general,

[n]either applying for an arrest warrant, nor making an arrest pursuant to an issued warrant can be considered "utterly intolerable in a civilized community".

Sena, 417 Mass. at 264; Aguoji v. Harvard Univ., No. 09-P-1786, 2010 Mass. App. Unpub. LEXIS 922, at *7 (Mass. Ct. App. 2010) ("The arrest of a person upon the basis of probable cause to believe that he has committed, or is committing, a criminal offense does not constitute 'extreme or outrageous' conduct."). That said, actions by law enforcement that are objectively

unreasonable under the Fourth Amendment to the United States
Constitution may be deemed extreme and outrageous. See Spencer
v. Roche, 755 F. Supp. 2d 250, 269 (D. Mass. 2010).  An
officer's actions may be deemed objectively unreasonable, for
instance, if he uses excessive force. See Barbosa v. Conlon, 962
F. Supp. 2d 316, 334 (D. Mass. 2013) (citing Poy v. Boutselis,
352 F.3d 479, 485-86 (1st Cir. 2003) (jury finds intentional
infliction of emotional distress in connection with an arrest
where police used excessive force)).

Here, the factual allegations in the amended complaint
state a claim for intentional infliction of emotional distress.
Although courts afford law enforcement officers significant
deference when making arrests and there was plausible probable
cause to arrest Gill, the amended complaint permits the
reasonable inference that the arrest described therein and the
events which took place thereafter involved extreme and
outrageous conduct.  Furthermore, Gill asserts in the amended
complaint that such conduct caused him to suffer "extreme shock,
fear, emotional distress, and mental trauma".

The complaint also states a claim for excessive force,
namely, that approximately 15 Marshals arrived at Gill's
residence dressed in full riot gear with assault rifles and
hand-guns drawn and pointed at him despite there being no
factual allegation indicating that Gill posed any threat of

danger to the Marshals.[3] See Baird v. Renbarger, 576 F.3d 340, 345-46 (7th Cir. 2009) (concluding that pointing a gun in the absence of danger constitutes excessive force); Robinson v. Solano County, 278 F.3d 1007, 1015-16 (9th Cir. 2002) (same); Baker v. Monroe Township, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (same); see also Poy, 352 F.3d at 485 (affirming verdict for intentional infliction of emotional distress based on an officer's use of excessive force "despite an absence of resistance, threats, or attempt to flee.").

Thereafter, Gill was allegedly shackled by force, handcuffed and transported to the Alexandria County Detention Center, where he was detained overnight with little food or water. Such conduct plausibly violates the Fourth Amendment as constituting excessive force and, therefore, is unprotected by the discretionary function exception to the FTCA and is evidence of intentional infliction of emotional distress. Cf. Limone, 579 F.3d at 102 (holding that challenged "conduct was unconstitutional and, therefore, not within the sweep of the discretionary function"); see also Loumiet v. United States, 828

---

[3] Although the D.D.C. also found that the level of force used by the Marshals was constitutionally permissible for the purpose of Gill's Bivens claim, see Gill, 415 F. Supp. 3d at 140, this Court finds that the facts alleged in the complaint state a claim for excessive force.

F.3d 935, 943 (D.C. Cir. 2016) (collecting cases holding the same).

**ORDER**

For the foregoing reasons, the government's amended motion to dismiss (Docket No. 47) is, with respect to:

- Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680 ("FTCA"), False Arrest (Count III);

- FTCA, False Imprisonment (Count IV)

- FTCA, Abuse of Process (Count V);

- FTCA, Abuse of Process: Deadly Force (Count VI);

- FTCA, Abuse of Process: Denial of Right to Counsel (Count VII); and

- Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Declaratory Judgment (Count IX),

**ALLOWED**; and those counts are **DISMISSED**, but is, with respect to:

- FTCA, Trespass (Count II); and

- FTCA, Intentional Infliction of Emotional Distress (Count VIII),

**DENIED**.

**So ordered.**

\s\ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 29, 2021