```
                United States District Court
                  District of Massachusetts
```

| | |
|---|---|
| Stephen Gill, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 19-12441-NMG |
| United States et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This action arises out of the seizure and detention of plaintiff Stephen Gill ("Gill" or "plaintiff") by a United States military commission.  Pending before the Court is a motion for summary judgment on liability filed by Gill (Docket No. 68) and a cross-motion for judgment as a matter of law (Docket No. 75) filed by the government.  For the reasons that follow, plaintiff's motion will be allowed, in part, and denied, in part.  Defendant's motion will be denied.

**I.  Background**

The Court previously recited the facts and circumstances giving rise to this action at length. See Gill v. United States, 516 F. Supp. 3d 64, 71-73 (D. Mass. 2021).  It reiterates them briefly here.

In October, 2016, Gill received a military commission subpoena to appear in Virginia to provide testimony before a military commission convened against Abd Al-Rahim Hussein Muhammed Al-Nashiri ("Al-Nashiri") for his alleged involvement in the attack on the USS Cole in October, 2000. Gill was previously an officer in the Judge Advocate General Corps ("JAG") and in that capacity served as legal advisor pro tempore to the commission. He sought to quash the subpoena shortly after receiving it but received no response. Nonetheless, Gill failed to appear before the commission to testify and as a result the presiding military judge, Judge Vance Spath, found him in civil contempt and issued a "warrant of attachment" empowering the United States Marshals Service to procure Gill's presence.

Gill alleges that the next day, approximately 15 Deputy United States Marshals dressed in riot gear and five uniformed police officers of the Town of Marshfield "stormed [his] home" with guns drawn and pointed at him. According to the complaint the officers handcuffed him, searched his person, "forcibly" shackled his waist and ankles, took his wallet and searched his residence.

Gill was then transported to the United States District Courthouse in Boston, Massachusetts where he was detained in a holding cell before being transported to Logan Airport and

escorted onto a flight to Reagan National Airport in the District of Columbia.  After being detained overnight in a cell in the Alexandria, Virginia County Detention Center, Gill was transported to the Mark Center in Alexandria, Virginia, where he testified via video teleconference technology before the commission convened in Guantanamo, Cuba.  After another brief detention, Gill was provided a plane ticket to return to Boston and $300 in cash.  Approximately ten hours later, he arrived at his residence in Massachusetts.

In November, 2019, Gill commenced the present action in the United States District Court for the District of Columbia.  That Court dismissed two of the ten counts of Gill's complaint and transferred the case to this judicial district.  Following the transfer, the government moved to dismiss the eight remaining counts.  In January, 2021, this Court dismissed six of the eight counts.  Thereafter, Gill filed a motion for summary judgment on the remaining claims, i.e. trespass (Count II) and intentional infliction of emotional distress (Count VIII).  The government opposes that motion and moves for judgment as a matter of law.

## II.  **Motions for Summary Judgment**

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d

816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**B. Plaintiff's Motion for Summary Judgment**

  **i. Trespass (Count II)**

A trespass is "an unprivileged, intentional intrusion on land in possession of another." Dusoe v. Mobil Oil Corp., 167 F. Supp. 2d 155, 163 (D. Mass. 2001). As the Court recited in its prior memorandum and order ("M&O"), a plaintiff claiming civil trespass must establish 1) his actual possession of the property and 2) intentional entry by defendant which is 3) unlawful. New England Box Co. v. C & R Const. Co., 49 N.E.2d 121, 128 (Mass. 1943). When law enforcement officers enter a plaintiff's land pursuant to a valid warrant and do not exceed the warrant's scope, they do not commit trespass. Leine v. City of Bothell, 904 F. Supp. 2d 1124, 1132 (W.D. Wa. 2012). When the warrant authorizing that entry is deemed invalid, however, such unlawful entry it tortious. Id. at 1032–33.

The facts are largely undisputed. Gill alleges that after he left his residence and was detained, the Deputy Marshals unlawfully entered his residence, "including each and every room, without a valid warrant and without showing [him] a valid warrant". He supports those allegations with a sworn affidavit. The government does not dispute that the Deputy Marshals entered Gill's home, nor that they "conducted a protective sweep for the purposes of officer safety". While the government purports to dispute many of Gill's allegations on the basis that the Deputy

-5-

Marshals "acted pursuant to . . . . policy directives and protocols", it has not proffered any such documents or explained how they refute the facts alleged.

Gill submits that entry onto his property without a valid warrant constituted trespass. The government rejoins that because the execution of a warrant "involves an element of judgment or choice" liability is foreclosed by the discretionary function exception to the Federal Tort Claims Act, citing 28 U.S.C. § 2680. Gill replies that the discretionary function exception does not apply because the warrant was latently defective and even if it were valid, the breadth of the search undertaken by the Deputy Marshals violated the Fourth Amendment of Constitution.

Government conduct is "discretionary" for the purpose of § 2680 where it 1) involves an element of judgment or choice and 2) is the kind of conduct that the exception was intended to shield. United States v. Gaubert, 499 U.S. 315, 322-23 (1991). Conduct is not discretionary if, inter alia, it is proscribed by the United States Constitution or a federal statute. Limone, 579 F.3d at 101. The Court held in its prior M&O that Gill's complaint stated a claim for trespass to which no exception to the FTCA applied, including the discretionary function exception. See Gill, 516 F. Supp. 3d at 80 (denying government's motion to dismiss Count II). It concluded that Gill had alleged

facts which, if proven, would establish that the warrant of attachment was latently defective and therefore invalid, e.g. that Gill was not afforded adequate notice and an opportunity to proffer just cause for his failure to appear before the commission, and that the Deputy Marshals' entrance onto his property therefore constituted trespass. Id. at 78.

For the purpose of the pending motion, Gill has supported his allegations with transcripts of the hearing at which he testified while detained, copies of the warrant of attachment and related documents and a sworn affidavit. As detailed above, the government does not materially dispute that the Deputy Marshals entered onto Gill's property or that he did not have an opportunity to proffer just cause for his failure to appear and testify. Gill is thus entitled to summary judgment on liability as to his trespass claim.

Finally, because the Court concludes that Gill is entitled to summary judgment on the trespass claim due to the invalidity of the warrant, it declines to consider his alternate argument that the Deputy Marshals committed trespass by exceeding the scope of the warrant when they conducted a protective sweep of his residence in contravention of the Fourth Amendment.

### ii. Intentional Infliction of Emotional Distress (Count VIII)

As the Court recited in its prior M&O, Massachusetts law imposes liability for intentional infliction of emotional distress when the defendant has engaged in extreme and outrageous conduct, without privilege, causing the plaintiff severe emotional distress. Limone v. United States, 579 F.3d 79, 91 (1st Cir. 2009) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318 (1976)).  Conduct is extreme and outrageous only if it is "beyond all bounds of decency and . . . . utterly intolerable in a civilized community". Sena v. Commonwealth, 417 Mass. 250, 263 (1994).

In general,

> [n]either applying for an arrest warrant, nor making an arrest pursuant to an issued warrant can be considered "utterly intolerable in a civilized community".

Id. at 264, Aguoji v. Harvard Univ., No. 09-P-1786, 2010 Mass. App. Unpub. LEXIS 922, at *7 (Mass. Ct. App. 2010) (stating that "[t]he arrest of a person upon the basis of probable cause to believe that he has committed, or is committing, a criminal offense does not constitute 'extreme or outrageous' conduct"). That said, actions by law enforcement officers that are objectively unreasonable under the Fourth Amendment to the United States Constitution may be deemed extreme and outrageous. See Spencer v. Roche, 755 F. Supp. 2d 250, 269 (D. Mass. 2010).

An officer's actions may be so construed if he uses excessive force. See Barbosa v. Conlon, 962 F. Supp. 2d 316, 334 (D. Mass. 2013) (citing Poy v. Boutselis, 352 F.3d 479, 485-86 (1st Cir. 2003) (finding intentional infliction of emotional distress in connection with an arrest where police used excessive force)).

Gill asserts that on October 18, 2016, at approximately 1:00 p.m., he was sitting in his home when he heard "three short knocks" on his front door. When he opened the door, he observed "perhaps a dozen or so [Deputy Marshals]" as well as approximately five municipal police officers who were pointing handguns and "military grade assault rifles" in his direction. Gill states that he continues to suffer from "extreme shock, fear, emotional distress, and mental trauma" related to the event. Here, again, the government responds that the Deputy Marshals "acted pursuant to . . . . policy directives and protocols" but does not explain what those directives and protocols are or otherwise materially dispute Gill's recitation of the circumstances of his arrest.

The Deputy Marshals' conduct in arresting Gill, a civilian lawyer who had refused to comply with a subpoena, was "extreme and outrageous". Limone, 579 F.3d 79. While courts afford "considerable leeway" to a law enforcement officer's assessment as to appropriate force in dangerous situations, such latitude does not extend to force that "is clearly excessive and

-9-

unreasonable under the circumstances". Baird v. Renbarger, 576 F.3d 340, 342 (7th Cir. 2009), see also Robinson v. Solano County, 278 F.3d 1007 (9th Cir. 2002). The force used to arrest Gill, i.e. the attendance of a dozen officers and Deputy Marshals arriving at his apartment in full riot gear with weapons drawn and pointed at him, was excessive and objectively unreasonable. Gill was not a suspect in any crime and the warrant of attachment had been issued only to procure his appearance before the commission. He did not threaten or otherwise resist the officers and the Deputy Marshals. Rather, when confronted Gill submitted to his arrest forthwith. In short, at no point before, during or after execution of the warrant was there a reasonable basis for the officers to believe that Gill posed any threat whatsoever.

Moreover, because the use of excessive and unreasonable force in effectuating an arrest constitutes a violation of the Fourth Amendment, the discretionary function exception to the FTCA does not bar liability. See Limone, 579 F.3d at 102.

Nevertheless, Gill is not entitled to summary judgment on his claim for intentional infliction of emotional distress because, upon the record evidence, a reasonable jury could find that the emotional distress he suffered was not "severe" for the purpose of his tort claim. See Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 91-92 (1st Cir. 2020) (explaining that

-10-

summary judgment is inappropriate where reasonable jury could rule in favor of the non-moving party). The evidence that Gill suffered severe distress is debatable. He states in a sworn affidavit that his arrest and detention caused him "extreme emotional trauma" from which he continues to suffer an adverse impact. Richard Kannen, who at the time of Gill's detention was defense counsel for Al-Nashiri, states in a sworn affidavit that Gill was "visibly upset and to my eye appeared quite shaken" when testifying. Finally, while in some cases extreme and outrageous conduct alone may give rise to an inference of severe emotional distress, see Caputo v. Boston Edison Co., 924 F.2d 11, 15 (1st Cir. 1991), the Court concludes Gill is not entitled to such an inference, at least not with respect to his motion for summary judgment, see O'Connor, 994 F.2d at 907.

### C. Defendant's Motion for Judgment

The government has moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) as well as Fed. R. Civ. P. 56. Insofar as defendant seeks dismissal under Rule 12, it requests, in essence, that the Court reconsider its prior denial of defendant's earlier motion. See Gill, 516 F.3d at 83 (denying motion to dismiss trespass and intentional infliction of emotional distress claims). The Court declines to do so.

Insofar as the government seeks summary judgment, its motion fails with respect to the trespass claim for the reasons

outlined above. As to the claim for intentional infliction of emotional distress, Gill has provided sufficient evidence thereof to survive defendant's motion which therefore will be denied. See Campbell v. Casey, 166 F. Supp. 3d 144, 152 (D. Mass. 2016) (denying summary judgment on intentional infliction of emotional distress claim where jury could conclude that severe distress existed based upon interrogatory responses and law enforcement conduct), Vacca v. Barletta, 753 F. Supp. 400, 405-06 (D. Mass. 1990) (holding similarly).

## ORDER

For the foregoing reasons, plaintiff's motion for summary judgment on liability (Docket No. 68) is, with respect to Count II, **ALLOWED,** but otherwise, **DENIED.**

Defendant's cross-motion for judgment as a matter of law (Docket No. 75) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 24, 2022